1  Jason Adam Jensen
   Pro Se Plaintiff
2  2186 Jackson Keller Rd
3  Ste 1097
   San Antonio, TX 78213
4  PH: 402-598-1285
   Email: jasonajensen@gmail.com
5



6                    **U.S. DISTRICT COURT**

7              **WESTERN DISTRICT OF MISSOURI**

8              **SOUTHERN DIVISION - SPRINGFIELD**

9  JASON ADAM JENSEN,                    Case No.: 22-3140-CV-S-BCW

10         Plaintiffs,                   **COMPLAINT OF VIOLATIONS**
                                         **OF THE FAIR DEBT**
11     v.                               **COLLECTIONS PRACTICES**
                                         **ACT, 42 U.S.C. § 1983 DAMAGES,**
12                                       **42 U.S.C. § 1983 PUNITIVE**
13  CITIBANK, N.A., a Corporation,       **DAMAGES, TRADEMARK**
    CITIGROUP INC, a Delaware Corporation, **ABANDONMENT AND REQUEST**
14  JH MET SUBSIDIARY B LIQUIDATING      **FOR DECLARATORY AND**
    TRUST, a Legal Trust Type Corporation, **INJUNCTIVE RELIEF UNDER**
15  DAVID R GAMACHE, individual capacity as **THE AMERICANS WITH**
    an attorney,                         **DISABILITIES ACT, COMMON**
16  STATE OF MISSOURI,                   **LAW ACCESS TO THE COURTS**
17  CHIEF JUSTICE PAUL C. WILSON, is his
    official capacity as Courts Administrator, **JURY TRIAL DEMANDED**
18  MISSOURI OFFICE OF COURT
    ADMINISTRATION, a State entity,      Judge: _____
19  KATHY S. LLOYD, official capacity as State
20  Court Administrator,
    STONE COUNTY, a State entity,
21  MECHELLE LEBOW, official capacity as
    Stone County Court Clerk,
22  IN RE JUDGE ALAN MARK
23  BLANKENSHIP, in his Exercise of
    Judgement at Federal Law capacity,
24  JUDGE DAVID A. COLE, official
    administrative capacity as Presiding Judge of
25  Stone County, and
26  Sheriff Doug Rader, official capacity Stone
    County Sheriff.
27
            Defendants.
28

## I. NATURE OF THE CASE

1.     Plaintiffs Jason A Jensen ("JENSEN"), individually on behalf of himself, brings this action against Contract Defendants:

      1.     Citibank, N.A. with regards to the Contract and Citigroup Inc with regards to the Trademark, and under the Trademark, are used interchangeably as ("CITI")

      2.     JH MET SUBSIDIARY B LIQUIDATING TRUST ("JH MET"), and

      3.     David R Gamache ("GAMACHE"),

      (hereinafter referred to collectively as "Contract Defendants," or individually by their respective names or aforementioned designations).


FURTHERMORE, JENSEN brings this action against the following State Defendants:

      1.  State of Missouri,

      2.  Chief Justice Paul C. Wilson ("WILSON"), is his official capacity as Missouri Courts Administrator,

      3.  Missouri Office of State Court Administrator ("OSCA"), a State entity,

      4.  Kathy S. Lloyd ("LLOYD"), official capacity as State Court Administrator,

      5.  Stone County ("STONE"), a State entity,

      6.  Mechelle Lebow ("LEBOW" and/or "COURT CLERK"), official capacity as Stone County Court Clerk,

      7.  IN RE Judge Alan Mark Blankenship ("BLANKENSHIP"), in his Exercise of Judgement at Federal Law in the 39th District of Missouri Courts,

8. Judge David A. Cole ("COLE"), official administrative capacity as Presiding Judge of Stone County Court(s), and

9. Sheriff Doug Rader ("RADER"), official capacity Stone County Sheriff.

(hereinafter referred to collectively as "State Defendants," or individually by their respective names or aforementioned designations).

2. JENSEN will be asserting that Citibank, N.A. did violate South Dakota Law, as designated as pertaining laws by the contract, S.D. Codified Laws § 57A-2-210 ("(1) A party may perform his duty through a delegate unless otherwise agreed or **unless the other party has a substantial interest in having his original promisor perform or control the acts required by the contract.** No delegation of performance relieves the party delegating of any duty to perform or any liability for breach." [emphasis added]) S.D. Codified Laws § 57A-2-210 is the State's enactment of the Uniform Commercial Code ("UCC") 2-210. In addition, when Citibank, N.A. assigned all rights and duties to JH PORTFOLIO DEBT EQUITIES LLC (predecessor of assignment to JH MET) with an active and surviving ARBITRATION AGREEMENT, as contractualized by CITI, without any controls over the ARBITRATION AGREEMENT's PROVISIONS after assignment, equate to Naked Licensing of the Citi/Citibank Trademark.

3. JENSEN will also be asserting that JH MET did violate the Contractual Agreements (Breach of Contract) surrounding the Arbitration Agreement by refusing to Arbitrate and attempting to get a Default Judgement, or a Judgement Procedurally and outside the Merits of the Case, waiving such Arbitration by Actions, and Violating the Fair Debt Collection Practices Act ("FDCPA") by using the Missouri Stone County Court as a weapon of infliction and JENSEN's Due Process.

4.      JENSEN will assert in this action, that when GAMACHE substituted the Affidavit Return of Summons ("Return of Service"), with a Statement of Hearsay, GAMACHE did violate the FDCPA in an extremely outrageous and damaging way. GAMACHE, by using his experience of a Court Officer, intimacy with the Clerk of Court, and the Status of his Bar License, to practically "Hack" the Judicial System to JENSEN's detriment and suffering. Furthermore, despite the fact the Return of Service did not qualify as what it purported to be by law, no Notice or Service was given to JENSEN for the document attempting to conceal the nature of the Return of Service. This Act by GAMACHE also implements the Clerk of Court into the Due Process Violation JENSEN contends defrauding the Court and JENSEN in such a matter amounted to.

5.      JENSEN will assert JH MET is responsible for the actions of their Attorney of Record. GAMACHE is responsible for his own actions. Under S.D. Codified Laws § 57A-2-210, UCC 2-210, CITI is responsible for the Breach of Contract and Failure to Perform under the Arbitration Agreement. However, CITI lacks the Arbitration Agreement it Assigned in its entirety to JH PORTFOLIO DEBT EQUITIES LLC. Furthermore, it seems completely undecided if the Arbitration Agreement reaches claims of Trademark Abandonment, complicated further by the lack of ability for Congress and the Courts to Delegate what Public Policy is; a subject intimately and of paramount importance to the application of Common Law Trademark Rights and Duties.

6.      This complaint seeks Judgement of Declaratory Relief from the Contract Defendants that the Assignment of said Account to JHMET, the Subject Matter of the Stone County Court Case, is null and void under S.D. Codified Laws § 57A-2-210 for their failure to Arbitrate creating JENSEN's "substantial interest in having his original promisor perform or

control the acts required by the contract"; that CITI did Naked License the use of the Citi/Citibank Trademark(s) to JH MET through JH PORTFOLIO DEBT EQUITIES LLC (now defunct?) as previous successor of interest, et cetera, in the application of the ABITRATION AGREEMENT of CITI's construction. The construction of this Arbitration Agreement imposes Duties on CITI, including the payment of ALL Arbitration and Arbitrator Fees in a dispute other than collection, and then, in collection, an Amount determined by the Rules of Arbitration but more than zero dollars, was not automatically Assigned to JH PORTFOLIO DEBT EQUITIES LLC by Contract, meaning it is Governed by and Subject to South Dakota's Uniform Commercial Code and other South Dakota and Federal Law. This complaint additionally seeks damages for violations of the FDCPA, Breach of Contract, and other Equitable Relief. Finally, this complaint seeks treble and punitive damages for intentional infliction of emotional distress due to the Outrageous Nature of the Violations from Contract Plaintiffs JHMET and GAMACHE, resulting in the emotional disturbance of a Disabled and Mentally Ill person, distress of being excluded from his Government and Court, and creating an environment very conducive to paranoid thinking.

7. This complaint seeks Judgement of Declaratory Relief from the State Defendants regarding the Access of State Court Records. The legal challenge is a complicated one. The COURT CLERK is responsible for Providing Court Records in a traditional and historical Court Administration. However, the Office of Court Administrator has designed and engineered the State's Digital interface for the Court known as CASE-NET. CASE-NET is a database, or structured computer dataset where data elements are given meaning and searching/indexing capabilities, regarding the Court. To function properly, or to the standard set by the Court, each document not only has document metadata, such as who filed, what, at what time, and whether

the document is a Complain, Summons, Motion, Order, or other Legal Instrument, but the location to access the actual document. All these Document Metadata entries are associate with another dataset for the Case, which would then have Case Metadata, such as Case Number, Judge Assignment, Status, and Party Information. Based on the Design period it is extremely likely that the said database is amongst the following technologies Microsoft SQL Server, Oracle, or an Open Source solution such as, MySQL, Postgre, or another SQL based database backend. Given that the Office of State Administrator has the data perfectly cataloged in such an organization, the Technology give the State the ability to run Queries to the Dataset. For example, one could request all the Return of Service Documents from all cases filed from 1/1/2020 to 5/31/2022 with a statement similar to "SELECT * FROM CaseDocuments JOIN Cases WHERE CaseDocuments.CaseId = Cases.Id AND Case.DateFiled > 1/1/2020 AND CaseDocuments.DocumentTypeId = ReturnOfService" (an example of a SQL or Structured Query Language). Given this massive technical ability of the CASE-NET system JENSEN is given no access to ANY documents and merely a Document List given a Case Number.

      8.     During the course of Stone County Court Case 21SN-AC00123, JENSEN requested all the Cases heard by Judge BLANKENSHIP on January 7th, 2022. This list is required to be made to Stone Count Local Court Rule 8.1 with the directive "The Circuit Clerk of Division One of each county shall prepare a trial docket of all civil and criminal cases that are scheduled to be heard or set for trial on the next Law Day" and/or said list wanted is given to the Stone County Sheriff's Office/Bailiffs for each Law Day who checks the list for your case during security screening at entering of the Stone County Justice Center. The COURT CLERK denied such request, on January 28th 2022 at 8:38AM by email, as "confidential" because it "contains confidential information and it is for Court use only[.]"

9. Given the Nature of 18 USC 1983 complaints regarding a "class of one" JENSEN requested exactly the above scenario from the CLERK OF COURT. All Return of Service Documents for 2 prior years, specifically any document where the Return of Service was filed as a Return but blank and a Statement was added by Opposing Council, and that Statement, which was entirely a hearsay recount of a phone call, in this case between the Plaintiff's Attorney and "Jennifer" of the Stone County Sheriff's Office, instead of Sheriff's Deputy or Agent signature or a notarized signature of a special process server to complete the required Affidavit. Not only did such a request not meet with a Quotation, the COURT CLERK responded that for the records JENSEN would be charged "research is $.20 per minute, copies are $.25 per page." So despite the fact the Missouri Courts have a system that is capable of providing the requested information as a Structured Query, or JENSEN could do his own research and copying with access to CASE-NET, the Court Clerk is going to charge fees outside the range of JENSEN discretionary spending to understand the nature of GAMACHE's forged Return of Service, how often it is performed, and by what Lawyers, and if there was a Conspiracy to Discriminate by using the STONE Court as an instrument to harass JENSEN. Furthermore, JENSEN has a Common Law Right to Access to the Court Records, then JENSEN has a Common Law Right to the digital version of the Court and its conveniences as well and the State cannot assign the Court's tasks to another entity to complete with digital technology escaping that Common Law Right of Access.

10. JENSEN will be asserting that the State Defendants MISSOURI, STONE, LEBOW, COLE, and RADER, did violate Title II of the Americans with Disability Act ("ADA") by refusing "Special Accommodations" (Reasonable Accommodation) surrounding the use of an electronic disability device, JENSEN's Cell Phone as Expertly Configured to Aide his Disability, in the Stone County Justice Center. JENSEN had no intention of entering any

Courtroom with said device and was at the Stone County Justice Center for a Meeting called by COLE to address the Complaint of Discrimination by the STONE COURT CLERK regarding the tone and level of JENSEN's voice on the Phone while requesting Services from the COURT CLERK. STONE and COURT CLERK maintain that the COURT CLERK and its agents, do not have to provide accommodations regarding Bipolar Behavior of "Yelling" on the phone. JENSEN has suggested a volume control for the phone on the Clerk's End. The failure of the COURT CLERK to provide JENSEN accommodations, the premature conclusion of the phone calls, and Discrimination of Services regarding certain COURT CLERK subordinates and refusal to provide services resulting in the most extreme Bipolar displays.

## II. JURISDICTION and PARTIES

11.     This Court has Jurisdiction under 28 U.S. Code § 1331 as Federal Questions arise from the Application of the Fair Debt Collection Practices Act, 42 U.S. Code 1983 depravation of Rights under Color of State Law, Breach of Contract in Interstate Commerce under the Commerce Clause, the Federal Arbitration Act, Trademark Law and its Forcible Abandonment under Naked Licensing Doctrine and Law as well as how National Public Policy and Common Law govern Trademarks and Patents as a State issued Monopoly, Violations of Due Process under the Fourteenth Amendment of the Constitution of the United States of America.

12.     This Court has Jurisdiction under 28 U.S. Code § 1332 of Diversity of Parties. JENSEN, the Plaintiff shares no State residency with any Defendant in a controversy amount which must be said to amount to over $75,000 with regards to CITI's Trademark alone. JENSEN independently claims damages in excess of $75,000.

13. JENSEN is requesting this Court exercise Supplemental Jurisdiction under 28 U.S. Code § 1367, having met the requirements of § 1331 and § 1332, with regards to the Application of South Dakota Law as required by the CITI Contract in this Action. The Federal Arbitration Act covers the Arbitration Agreement while state claims usually cover Breach of Contract claims, so to the extent that Breach of Arbitration Agreements are a state claim, Supplemental Jurisdiction is requested. Furthermore, to the extent that the Uniform Commercial Code is a state claim, Supplemental Jurisdiction is requested. Moreover, to the extent access to the Stone County Court was denied, Missouri Law regarding Public Records, Access to Governmental Entity Documents, and the Missouri State Constitution, again, Supplemental Jurisdiction is requested. The properness of this request is heightened by the Legal Complexities Presented by Redress of Grievances perpetrated by a State Court itself. Clearly, Stone County Court having State Personal Jurisdiction over the Stone County Clerk of Court presents problems. Appeal has been denied by way of Voluntary Dismissal. But the Case (21SN-AC00123 of the 39th District of Missouri – Stone County) could not include the issues of Discrimination. Those issues are resolved here in the Federal Court on Public Access to Records is so clearly established in the entirety of the United States, and perhaps especially in Missouri, that resolution of State claims here are unlikely to be precedential. The above delineations do not exhaust the extent of the request for Supplemental Jurisdiction.

14. Parties-

Plaintiff, Jason A Jensen, Pro Se, is a transient United States Citizen living in mobile housing going from Park to Park (Federal, State, or Private) to avoid the discrimination associated with Mental Illness, resident of Florida, Pasco County, has been seeking Texas Residency with issues surrounding a Legal Address. JENSEN spent the December to May in

Rockport Texas and only left because of the Trial set on the Contract Case. JENSEN asserts his

Legal Address is: 2186 Jackson Keller Rd, Ste 1097, San Antonio, TX 78213

Defendants:

1. Citibank, N.A. ("CITI") is a National Associated Bank, the CITI, registration number 73207983, and CITIBANK Trademark, registration number 72070290, is Registered to CITIGROUP INC. CORPORATION DELAWARE, 388 Greenwich Street, New York, New York, 10013. Citibank, N.A. has a co

2. JH MET SUBSIDIARY B LIQUIDATING TRUST

3. David R Gamache is a professional Attorney at Law, Missouri Bar MBE# 34112, with a central office at 1000 Camera Ave Suite A, St. Louis, MO 63126.

4. State of Missouri is a State with the United States of America, the Missouri Attorney General's Address is Missouri Attorney General's Office, Supreme Court Building,  207 W. High St, P.O. Box 899, Jefferson City, MO 65102

5. Chief Justice Paul C. Wilson is a Missouri Supreme Court Justice with a principle place of operation at 207 West High Street, Jefferson City, Missouri 65101.

6. Missouri Office of State Court Administrator is a Judicially created Governmental Entity located at 2112 Industrial Drive, Post Office Box 104480, Jefferson City, MO 65110.

7. Kathy S. Lloyd is the State Court Administrator executing the functions of the Missouri Office of State Court Administrator, principal place of business is

the Office of State Court Administrator located at 2112 Industrial Drive, Post Office Box 104480, Jefferson City, MO 65110.

8. Stone County is a political subdivision of the State of Missouri, Offices located at Stone County [Historical] Courthouse, 108 East 4th Street, Galena, Missouri, 65656.

9. Mechelle Lebow is the elected Stone County Court Clerk in Missouri, principal place of operation is the Stone County Justice Center located at 110 S Maple St, Galena, MO 65656.

10. IN RE Judge Alan Mark Blankenship is an Associate Judicial Officer in the State of Missouri for the 39th Judicial District, Stone County, principal place of operation is the Stone County Justice Center located at 110 S Maple St, Galena, MO 65656.

11. Judge David A. Cole Blankenship is the Presiding Judicial Officer in the State of Missouri for the 39th Judicial District, Stone County, principal place of operation is the Stone County Justice Center located at 110 S Maple St, Galena, MO 65656.

12. Sheriff Doug Rader is the elected Stone County Sheriff, principal place of operation is the Stone County Justice Center located at 110 S Maple St, Galena, MO 65656.

15. This case arises from the actions taken by Defendants ultimately culminating and causing rise of action in Stone County, Missouri. Therefore, jurisdiction of this court is proper.

### III. FACTUAL ALLEGATIONS

**JENSEN as a Qualified Individual under the American's with Disabilities Act**

16.     JENSEN has been Diagnosed Bipolar, in various degrees, as well as other Mental Health Diagnosis, many equally, some more severe in affliction.

17.     JENSEN collects Social Security Disability Insurance for said Mental Health Disabilities and is medically insured by Medicare.

18.     JENSEN suffers from a disorder often described as an emotional mental health or behavioral health disorder which causes him to act inappropriate towards others based on triggers. For example, the nature of a telephone, how the same number can result in multiple contacts of no personal memorial purpose, such as calling a COURT CLERK's office and getting any number of persons to deal with, aggravated by years of being forced to wait on hold, press 1 for language followed by tiers of tiers of prompts to route the call, and finally, please, in a short phrase, let me know the reason for the telephone call so this computer which cannot understand intent expressed in language, can attempt to route the call using a selection based on spoken keywords. Not to mention, the scam and telemarketing calls. So, to JENSEN, the phone has become so impersonally irritating to his emotional state that often times, when otherwise extremely stressed, JENSEN acts out in tone of Voice, Pitch, and Attenuation. In the present case, JENSEN had been forced to remain in the area of Stone County in order to "secure" a Motion to Compel Arbitration which JH MET was required to voluntarily abide by under Contract, remember JENSEN travels often to avoid discrimination which is more rampant today that racism in the 60's. People actually talk on the News about what "we", as a country, should be doing about the "mentally ill", like the one that recently rampaged in violence, as if they are all the same and they all need the same prescription to solve the "problem" which is them. JENSEN filed the Motion to Compel Arbitration on 06/02/2021 which was not granted by

BLANKENSHIP until 09/10/2021, roughly 3 months later, but nothing was more stressful than having to leave a camp JENSEN paid to be until May 1st, 2022 with opportunity to stay much longer, drive 1000 miles north from Rockport Texas to Stone County Missouri because after the Motion to Compel Arbitration was Granted, BLANKENSHIP issued an order of Default Judgement on 01/07/2022 despite any motions by JH MET based on a failure of arbitration, without any Court Record except the Order, seemingly vacating the Arbitration Agreement based on a failure to obey State Court Rules regarding Appearance to a Court that was forbidden by Agreement. It does seem apparent that JH MET requested the Default Judgement and provided a machine typed Order to be signed by Judge BLANKENSHIP. However, on 01/27/2022, BLANKENSHIP vacated the Default Judgement Order "to avoid manifest injustice" and set the Case for Case Review. Seemingly because of a failure to appear to a Court that had no Jurisdiction to the Claims as the Arbitration Agreement "[replaced] the right to go to court, have a jury trial or initiate or participate in a class action." And such right is exercised by Filing a Motion to Compel Arbitration, nothing about a Stay, per the Arbitration Agreement, page 10, right column, second paragraph, with "to choose arbitration, a party may file a motion to compel arbitration in a pending matter" which seems to imply duty of compliance of the option exercised. So, JENSEN was forced to leave early, drive 1000 miles at $5.25/gallon of Diesel, to attend a "Bench Trial" set for 05/06/2022 at 11:00 AM. JENSEN was also stuck in a severe storm which flipped 3 commercial semi trucks of around 80,000 pounds along JENSEN's route, when JENSEN called the COURT CLERK and was "Yelling" at the COURT CLERK. The CLERK hung up 3 times, refused to assist claiming on LEBOW could assist, and refused accommodations. Then the Stone County Court Case was dismissed the day before Trial when it became apparent that JENSEN was going to Appear for Trial. Oh, and the trip had exhausted a

huge portion of JENSEN monthly disability benefits. Then as part of the Complaint Process as required by Title II of the Americans with Disabilities Act, was given 3 hours' notice, during a call he initiated, of a Meeting, where Accommodations of JENSEN cell phone was denied without reason, forced to wait outside in cold wet conditions with no place to sit, after the agreed 12 noon appointment, for approximately 2 hours 30 minutes, then COLE denied the use of JENSEN's phone again despite Missouri Law presuming government meetings are open and should be allowed to be recorded. RADER also exemplified intimidation of JENSEN's attendance by screaming at JENSEN as an invitation. Also, remember the COURT CLERK contends if JENSEN yells he can be denied service and separated from staff, but Sheriff RADER can yell at JENSEN.

19.    JENSEN is, and apparently will forever, as JENSEN's Father lives at 6 Arrowhead Rd, Kimberling City, Missouri, 65686, be responsible for responding to debt cases under the FDCPA, which are served to JENSEN's father despite JENSEN not residing at his father's house, to Cases filed with Stone County, so JENSEN is prepared to return to Stone County Court for Services, Programs, Functions, and Official Purposes. Furthermore, should JENSEN suffer a medical emergency surrounding Civil Commitment of a Mentally Ill Person while visiting his father, JENSEN would absolutely be attempting to file a Writ of Habeas Corpus in Stone County, and reserves access, and has a fundamental common law and constitutional right, to the Court while visiting and assisting a friend for Records and Record Requests.

**Nature of CITI's Arbitration Agreement, Selection of Legal Forum, implied Public Policy Implications of Assigning a Contract with Arbitration Agreement Governed by UCC 2-210**

**when Said Arbitration Agreement includes obligation to pay fees while CITI operates**

**under Trademarks**

20.     CITI did construct a Contract to engage in Federal Interstate Commerce in Lending and Bank Card type Loans, where CITI specified the selected forum of South Dakota law, implemented an Arbitration Agreement, and Offered said Loan Products and Services under the CITI and CITIBANK Trademarks.

21.     CITI assigned rights to an Account it alleged was JENSEN's to JH Portfolio Debt Equities on April 28th 2017. The Assignment used the language "the Bank does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver" in the assignment. Which was later assigned to JH MET by liquidation on May 20th, 2019. CITI never notified JENSEN nor considered JENSEN's interests in enforcement of the Arbitration Agreement duties during assignment. There is little doubt that a Debt Collection Agency has affinity to Arbitration especially if said agreement requires the Contract Assignee to pay for Arbitration Fees.

22.     Under UCC 2-210, as codified by S.D. Codified Laws § 57A-2-210, CITI cannot assign liability for Breach of Contract regarding the Arbitration Agreement, especially since the Arbitration Agreement is a Debt Provision payable upon Arbitration Demand and/or Motion to Compel Arbitration. JENSEN has the contractual expectation that CITI will enact the Arbitration Agreement in its spirit, which is an offer of excess to agree to pay for all the arbitration fees save one claim type collection of debt. An assignment of said account to an entity that operates with less than clean hands severely impede JENSEN expectations, executing the provisions or rights of, and the meeting of the minds for the Arbitration Agreement.

23. Furthermore, the Contract Assigned is one with considerable bargaining advantage, such as the Right to Amend/Alter the Contract, Designation of Law, and the Captive Audience

aspects of being a Debtor. While in extreme default on payments, the contract basically closes all aspects except the Right to Collect Amounts Due Immediately, any Claim surviving Statute of Limitations, perhaps the Right to Amend/Alter, and the Arbitration Agreement. A proposition JENSEN would not agree to with JH MET and only agreed to with CITI as a National Associated Bank operating under Trademarks and Federal Regulation.

24.     CITI assigned the Arbitration Agreement without Contractual Rights Regarding Quality Controls and Oversight.

25.     CITI failed to ensure Quality of Service with regards to the Arbitration Agreement. Surely most of CITI's customers have had a different experience with the use of the Arbitration Agreement while an Alleged Account Holder of CITI's financial Services.

26.     CITI shares liability for JH MET's refusal to Arbitrate under the Agreement as Governed by S.D. Codified Laws § 57A-2-210.

26.     JENSEN has no firm knowledge of said account and as such can confirm nor deny the account without more details, such as purchases made, to said account.

**JH MET, GAMACHE, COURT CLERK, and IN RE BLANKENSHIP Activities Related to the Federal Arbitration Act, FDCPA, and Due Process**

27.     JH MET did retain GAMACHE as an Attorney at Law for Collection of Debt.

28.     JH MET is a Debt Collection Agency under the FDCPA which purchases bad debt for the sole purpose of recovery of bad debt.

29.     GAMACHE is an Attorney that specializes in Debt Collection under the FDCPA.

30.     JH MET was assigned a CITI account with an Arbitration Agreement.

31.     On June 3rd, 2021, JH MET through GAMACHE did request a continuance despite the Arbitration Agreement. JH MET never responded to the Motion to Compel Arbitration which was filed 1 day after the fraudulent Return of Service was filed with the Court by GAMACHE.

32.     On June 1st, 2021, GAMACHE did electronically file a blank Summons with a quasi-legal document with the Statement "As per a phone call to Jennifer at Stone County Sheriffs Office, the attached summons was served on May 18, 2021. The summons was accepted by Jack, the defendants father, at 10:30 am. Upon receipt in our office, the signed copy will be filed with the Court." Signed GAMACHE. JENSEN was not served a copy of the attachment nor is there a certificate of Service on said Document. The document includes language that the Document is an "attempt to collect debt".

33. The resulting public Court Docket entry was "Family Member/Roommate Served: Document ID - 21-ADSM-317; Served To - JENSEN, JASON A; Server - SO STONE COUNTY-GALENA; Served Date - 18-MAY-21; Served Time - 10:30:00; Service Type - Sheriff Department; Reason Description - Served; Service Text - By leaving with Jack, Father" which gives no indication of a statement of hearsay used to "bypass" the process of Legal Service. Legal Service is a part of Due Process. JENSEN only learned of such document when JENSEN requested it to see what Sheriff Deputy had served JENSEN.

34.     The use of intimate knowledge of the COURT CLERK, who retains absolute immunity in the filing of documents which cannot extend to GAMACHE in the extent GAMACHE conspired with the COURT CLERK, willingly or unwillingly, knowingly or not, to deprive JENSEN's Due Process to expedite the attainment of Judgement by STONE Court. IN RE BLANKENSHIP also enjoys Absolute Immunity in setting a Bench Trial Date after a Motion

to Compel Arbitration was Granted which does not translate to GAMACHE and JH MET in getting an off record judicial agreement to a Default Judgement vacated as "manifest injustice" then requesting a Bench Trial all to Voluntarily Dismiss it one day before Trial at 3 pm electronically but mailing a copy to JENSEN, so no real notice.

35.     No record of the true Summons was ever filed with the Court. Its location is unknown. JENSEN attempted to locate it by contacting the COURT CLERK and the Stone County Sheriff's Office. JENSEN doubts its authenticity. JENSEN doubts the phone call ever occurred. Jack, who's legal name is, actually, John Jensen, JENSEN's Father, never accepted Service unless throwing a document at Jack accounts for Service. The person was not wearing a Sheriff's uniform or operating a Sheriff's vehicle. Jack, or John Jensen, has a policy of handing personal affairs with Jack Jensen while retaining the legal name John Jensen.

36.     There is no reason the Sheriff would break chain of custody, returning the Summons to GAMACHE in St Louis when the Sheriff is required to submit the Completed Summons with the COURT CLERK in STONE. When a Sheriff returns a summons, notarization is not required.

37.     JENSEN was defrauded into thinking service had been properly completed by GAMACHE and JH MET.

38.     JENSEN was required to drive from Rockport, Texas to Galena, Missouri to defend against an action set for Trial after a Granted Motion to Compel Arbitration spending approximately $600 in Diesel Fuel, $100 in Food and Drinks, and $400 Gambling losses since Casinos were some of the only places to stay the night without expense or reservation with a 33 foot Motorhome pulling a car dolly and car.

39.    JENSEN has suffered Mental Health, and agitation of existing Mental Health, issues as a result of the treatment in the attempt to Collect the Debt. This includes sleep disturbances, mood disruption, stress, depression, and outbursts which the COURT CLERK can attest to.

**State Defendants Actions Regarding Access to Court Records and Title II of the Americans with Disabilities Act**

40.    COURT CLERK did deny a list of cases heard by BLANKENSHIP on January 7th, 2022 in an email dated January 28th, 2022 as "confidential".

41.    COURT CLERK did refuse accommodations regarding JENSEN's request with his mood while making requests by telephone.

42.    COURT CLERK did memorialize that refusal by suggesting JENSEN should only call when his mood disorder was not afflicting JENSEN in an official letter dated May 4th, 2022.

43.    COURT CLERK did attempt to refuse the Appeal Process of the Title II ADA mandated complaint process by attempting to refuse JENSEN request for appeal as "incomplete" despite no form, or structured process to follow in attempting the Appeal.

44.    COLE did refuse the Open aspect of all meeting in government entities under the Sunshine Act of Missouri. COLE denied Accommodations on May 23rd, 2022 regarding the use of JENSEN's personal disability device his Cell Phone within the Meeting. COLE did require JENSEN to wait outside in cold rain with no where to sit from 12 noon to approximately 2:28 pm on May 23rd, 2022.

45.    RADER did refuse JENSEN's accommodation request to enter Stone County Justice Center with his disability device his Cell Phone on May 23rd, 2022. RADER did

intimidate JENSEN by yelling at him that the "deal" was that JENSEN could only meet with

COLE in a Courtroom and without his disability device.

## IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### Violations of the FDCPA

46.    JENSEN incorporates paragraphs 3-5, and " JH MET, GAMACHE, COURT

CLERK, and IN RE BLANKENSHIP Activities Related to the Federal Arbitration Act, FDCPA,

and Due Process" paragraphs 27-35.

47.    The behavior by GAMACHE and JH MET complained about is in Violation of 15

U.S. Code § 1692d. As harassment and abuse of a debtor in the Collection of a Debt.

48.    The behavior by GAMACHE and JH MET complained about is in Violation of 15

U.S. Code § 1692e. A debt collector may not use any false, deceptive, or misleading

representation or means in connection with the collection of any debt.

49.    The FDCPA allows for recovery of Statute Damages in an amount up to $1,000

on top of any actual or other kind of damages.

### SECOND CAUSE OF ACTION

#### 42 USC 1983 claims against JH MET and GAMACHE

47.    JENSEN incorporates paragraphs 3-4, 9, and "JH MET, GAMACHE, COURT

CLERK, and IN RE BLANKENSHIP Activities Related to the Federal Arbitration Act, FDCPA,

and Due Process" paragraphs 27-35.

48.    JH MET and GAMACHE attempted and succeeded in circumventing elements of

JENSEN's Due Process regarding Service of Process within the 14th Amendment of the United

States Constitution under the Color of State Law by colluding or conspiring with the Court Clerk, or deceiving the COURT CLERK, to accept a Summons not signed, with a Statement of Hearsay, as completed.

## THIRD CAUSE OF ACTION

**Nullification of the Assignment of Contract to JH MET for failure to Arbitrate Under UCC**

**2-210**

49.     JENSEN incorporates paragraphs 2,5,7,21, and 22.

50.     Under South Dakota Law, JENSEN has a Right to Contractual Performance under the Arbitration Agreement that affects CITI's ability to assign the Contract under 57A-2-210.

## FOURTH CAUSE OF ACTION

**CITI's Abandonment of trademarks by Naked Licensing Trademarked Arbitration**

**Agreement Within Trademarked Financial Services**

51.     JENSEN incorporates "Nature of CITI's Arbitration Agreement, Selection of Legal Forum, implied Public Policy Implications of Assigning a Contract with Arbitration Agreement Governed by UCC 2-210 when Said Arbitration Agreement includes obligation to pay fees while CITI operates under Trademarks" Paragraphs 20-26; 2, and 6.

52.     CITI, by selecting the South Dakota Legal Forum which enacted 2-210 of the UCC, in combination with Common Law Trademark duties, where the Assignment of CITI's contract was tantamount to a Licensing Agreement without Quality Controls of the Arbitration Agreement amounted to Naked Licensing Abandonment of the Mark.

1    **FIFTH CAUSE OF ACTION**

2    **Violations by State Defendants of the Americans with Disabilities Act, Title II, regarding**

3    **Due Process and Complaints of Discrimination**

4
           53.      JENSEN incorporates "JENSEN as a Qualified Individual under the
5
     American's with Disabilities Act" paragraphs 16-19, "State Defendants Actions Regarding
6
7    Access to Court Records and Title II of the Americans with Disabilities Act" paragraphs 40-45,

8    and 7-10.

9
           54.      State Defendants LEBOW, COLE, RADER, STONE, and MISSOURI, did
10
     refuse mandatory ADA Title II requirements surrounding Accommodations and Complaint
11
12   Procedures.

13                              **SIXTH CAUSE OF ACTION**

14                               **Access to Court Records**

15         55.      JENSEN incorporates paragraphs 7,8,9, and 40.
16
           56.      JENSEN has a common law Right to access Court Documents.
17
18         57.      The scheme implemented by State Defendants MISSOURI, WILSON, OSCA,

19   LLYOD, STONE, LEBOW, and/or COLE, has resulted in a computer system operated by the

20   Missouri Court that has all Court Records, but is excluded in its entirety from public access

21   beyond case and document metadata.

22                             **SEVENTH CAUSE OF ACTION**
23
     **Declaratory Relief by Writ of Mandamus IN RE BLANKENSHIP regarding the**
24
25   **enforcement of Arbitration Agreements under U.S. Code of Statutes Chapter 9**

26

27

28

58. JENSEN request this Court take JUDICIAL NOTICE AND RECORD of all Stone County Court activities, filings, orders, and records, of 21SN-AC00123[-01]'s Docket. JENSEN reincorporates paragraphs 18,34, and 38.

59. 9 USC et al Governs the Federal Arbitration Act.

60. 9 U.S. Code § 2 titled "Validity, irrevocability, and enforcement of agreements to arbitrate" requires that an Arbitration Agreement be honored as Agreed, preempts State Law, and once BLANKENSHIP granted the Motion to Compel Arbitration, § 2 forbid the Default Judgement entered on January 7th, 2022 and the setting of a Bench Trial on March 7th, 2022 for May 6th, 2022 for failing to appear to a Court Case where all Claims were covered by an Arbitration Agreement. No motions were filed by JH MET to vacate the Order to Compel Arbitration. No Documents was submitted to the Court or JENSEN by JH MET that Arbitration was initiated and Defaulted by JENSEN for refusal to participate in Arbitration or Failure to Pay Fees.

## **Punitive Damages**

33. The conduct of Contract Defendants JHMET and GAMACHE described above is outrageous. Defendants' conduct demonstrates a willful reckless disregard for the Constitutional Rights of Others. The acts and omissions described above were willful and performed with actual or implied malice. Punitive and exemplary damages are therefore appropriate and should be imposed in this instance.

## **V. PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for a judgment against Defendants for:

1. Injunctive and equitable relief as the Court deems appropriate including:

1    RADER from enforcing Courtroom Rules to the Entirety of the Stone County Justice

2    Center,

3    2.  Compensatory damages to be paid by all Contract Defendants, according to proof at trial;

4    3.  Punitive damages as the court deems appropriate;

5    4.  Costs of this lawsuit; and

6    5.  Any other relief as the court deems appropriate.

7

8    Dated: June 1, 2022                                        Jason A Jensen

9

10                                                                Pro Se Plaintiff

11                                                                2186 Jackson Keller Rd
                                                                  Ste 1097
12                                                                San Antonio, TX 78213
                                                                  PH: 402-598-1285
13                                                                Email: jasonajensen@gmail.com