

MISSOURI DEPARTMENT OF COMMERCE AND INSURANCE
PO BOX 690
JEFFERSON CITY, MO 65102-0690

PRESORTED
FIRST CLASS

US POSTAGE
ZIP 65109
02 4M
0000380614 DEC 13 2022
$ 002.44²

JASON JENSEN
2186 JACKSON KELLER RED
STE 1097
SAN ANTONIO, TX 78213

KMFZNB3  78213

Governor Michael L. Parson
State of Missouri



Department of Commerce
and Insurance
Chlora Lindley-Myers, Director

December 12, 2022

JASON JENSEN
2186 JACKSON KELLER RED
STE 1097
SAN ANTONIO, TX 78213

## NOTICE OF REJECTION OF SERVICE

Please find enclosed the summons petition and any accompanying documents or other pleadings, which were recently received by the Department of Commerce and Insurance. These pleadings are being returned to you because:

Said material is not service of process and should be served directly upon the insurer.[20CSR 800-2.010(7)]

SERVED TO WRONG DEPARTMENT. TRIED CONTACTING, BUT NEVER RECEIVED A CALL BACK.

The Department will endeavor to effect service of process pursuant to statute when the above defects are cured and the corrected documents are served on us.

Sincerely,

Joni Harding

**Enclosure:** JASON ADAM JENSEN v. CITIBANK, N.A.
United States Bankruptcy Western District, Case Number: 6:22-CV-03140-BCW
Other Defendants: SECRETARY OF STATE JOHN R. ASHCROFT

**CC:** United States Bankruptcy Western District

Case 6:22-cv-03140-BCW   Document 41-1   Filed 12/17/22   Page 2 of 41

# UNITED STATES DISTRICT COURT

### for the

Western District of Missouri ☑

| | |
|---|---|
| Jason Adam Jensen | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | )    Civil Action No. 6:22-CV-03140-BCW |
| CITIBANK, N.A., et al., | ) |
| | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*    STATE OF MISSOURI
ATTN: SECRETARY OF STATE JOHN R. ASHCROFT
600 West Main Street
Jefferson City, MO 65101

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

     Jason Adam Jensen
     2186 Jackson Keller Rd
     Ste 1097
     San Antonio, TX 78213

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: ___10/12/22___         _____
                                                *Signature of Clerk or Deputy Clerk*

# U.S. DISTRICT COURT

## WESTERN DISTRICT OF MISSOURI

### SOUTHERN DIVISION - SPRINGFIELD

| | |
|---|---|
| JASON ADAM JENSEN, | Case No.: 6:22-CV-03140-BCW |
| Plaintiffs,<br><br>v. | **COMPLIANCE WITH ORDER DATED JUNE 10th 2022 AND OBJECTIONS** |
| CITIBANK, N.A., a Corporation, CITIGROUP INC, a Delaware Corporation, JH MET SUBSIDIARY B LIQUIDATING TRUST, a Legal Trust Type Corporation, DAVID R GAMACHE, individual capacity as an attorney, STATE OF MISSOURI, CHIEF JUSTICE PAUL C. WILSON, is his official capacity as Courts Administrator, MISSOURI OFFICE OF COURT ADMINISTRATION, a State entity, KATHY S. LLOYD, official capacity as State Court Administrator, STONE COUNTY, a State entity, MECHELLE LEBOW, official capacity as Stone County Court Clerk, IN RE JUDGE ALAN MARK BLANKENSHIP, in his Exercise of Judgement at Federal Law capacity, JUDGE DAVID A. COLE, official administrative capacity as Presiding Judge of Stone County, and Sheriff Doug Rader, official capacity Stone County Sheriff.<br><br>Defendants. | **JURY TRIAL DEMANDED**<br><br>Judge: Honorable Brian C. Wimes |

## I. COMPLIANCE WITH ORDER DATED JUNE 10th, 2022

1.　　　JENSEN has attached the proposed amended complaint based on the little due process provided as to the deficiencies of his original complaint. Quite simply JENSEN has

1   attempted to "simplify" many statements of the Complaint. JH MET's address is still unlocatable

2   on purpose. There are also JH MET holding type Corporations Registered and other such entities

3   JENSEN cannot understand or figure out. However, the named defendant DAVID R

4   GAMACHE was the attorney of record regarding the actions in STONE county Court.

5

6

7             **II. OBJECTIONS WITH ORDER DATED JUNE 10th, 2022**

8         2. The order states that JENSEN must follow <u>Fed. R. Civ. P. 12(b)(6)</u>. However, reading

9   the Fed. R. Civ. P. stays the Authority for such rules are:

10

11             *TITLE 28, UNITED STATES CODE §2072. Rules of procedure and*

12         *evidence; power to prescribe (a) The Supreme Court shall have the power to*

13         *prescribe general rules of practice and procedure and rules of evidence for cases*

14         *in the United States district courts (including proceedings before magistrate*

15         *judges thereof) and courts of appeals. **(b) Such rules shall not abridge, enlarge***

16         ***or modify any substantive right. <u>All laws in conflict with such rules shall be of***</u>

17         <u>***no further force or effect after such rules have taken effect.***</u> *(c) Such rules may*

18

19         *define when a ruling of a district court is final for the purposes of appeal under*

20         *section 1291 of this title.*

21         3. The process of filing under the In Forma Pauperis is substandard in Due Process in the

22   Extreme. Should a Judge Challenge a Filing, Sua Sponte immediately after filing, the procedure

23   often followed there is to issue a SHOW CAUSE ORDER creating Due Process. This gives the

24   petitioner the opportunity to Respond to the Noted Deficiencies and creates a back and forth

25   effort in search of the truth in facts.

26

27

28

1      4. However, when filling a complaint without payment of fees, the process then becomes,

2 as is here, a """"Your complaint is deficient."""" Which this court actually expressed with "

3 Because a pro se litigant still must comply with the Federal Rules and Court procedures, and

4 because the Court cannot conclude the proposed complaint is sufficient under <u>Fed. R. Civ. P.</u>

5 <u>12(b)(6)</u>, the Court grants Plaintiff leave to file a proposed amended complaint."

6

7      5. After such order, objections and any filing from the Petitioner is then ignored/denied

8 for the express purpose of minimizing and diminishing Due Process to nil.

9      6. Then all appeal is denied, all hearings are denied or ignored, and then the case is

10 dismissed for failure to comply with an order the petitioner does not comprehend as it is as vague

11 as a computerized error message by the Iconic computer the Apple //e which used to reply upon

12

13 a malformed command "?SYNTAX ERROR". At least that was acceptable as it only regarded

14 one command line input. In this case, the Court is applying the same "error message" to 22 pages

15 of legalese.

16

17      7. Then <u>28 U.S.C. § 1915(e)</u> states:

18          *(2) Notwithstanding any filing fee, or any portion thereof, that may have*

19          *been paid, the court shall dismiss the case at any time if the court determines*

20          *that—*

21          *(A) the allegation of poverty is untrue; or*

22          *(B) the action or appeal—*

23

24              *(i) is frivolous or malicious;*

25              *(ii) fails to state a claim on which relief may be granted; or*

26              *(iii) seeks monetary relief against a defendant who is immune from*

27              *such relief.*

28

8. In other words, there is no Due Process and the Court is Ordered to Dismiss the Case – which seems to Violate the very essence of Separation of Powers as well as Due Process.

9. In arguendo, what would prevent the same law from saying: "*Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the Case makes Claim against Amazon.com or another Corporation.*"

10. Furthermore, the class of mandatory dismissals ordered upon this Court are not of the same Origins. Frivolous is a Legal Standard required in expression of opinions. Malicious is another Legal Standard required by the same – the same concepts no doubtly exist in any Court of origin, age, language, or religion so long as the same purpose of the Court is Maintained.

11. In stark contrast to the above, "fails to state a claim on which relief may be granted", specifically refers to a Rule of this Court as promulgated by the Supreme Court of the United States. Then it not only refers to that Rule, it then prescribes a required Court Action of Dismissal or Denial.

12. The Court has then Applied this in Unison with the "Application Process" to remove all elements of Due Process. In fact, this Court could easily Apply the two Laws together to deny any person of minority all due process rights, all appeal rights, and give no more to the petitioner than "With Consideration, your complaint is insufficient and therefor denied." This has the very effect of not allowing the Person to perfect their Argument. It also leaves this Court with an unreasonable amount of discretion in the "Application Process".

Dated: June 30, 2022                                    Jason A Jensen

1      //s/JasonAJensen

2      Pro Se Plaintiff

3      2186 Jackson Keller Rd
4      Ste 1097
       San Antonio, TX 78213
5      PH: 402-598-1285
       Email: jasonajensen@gmail.com
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Jason Adam Jensen
   Pro Se Plaintiff
2  2186 Jackson Keller Rd
   Ste 1097
3  San Antonio, TX 78213
4  PH: 402-598-1285
   Email: jasonajensen@gmail.com
5

6                          **U.S. DISTRICT COURT**

7                     **WESTERN DISTRICT OF MISSOURI**

8                    **SOUTHERN DIVISION - SPRINGFIELD**

9  JASON ADAM JENSEN,                    Case No.: 6:22-CV-03140-BCW

10              Plaintiffs,
                                         **AMENDED COMPLAINT OF**
11       v.                              **ABUSE UNDER  THE FAIR DEBT**
                                         **COLLECTIONS PRACTICES ACT**
12
                                         **JURY TRIAL DEMANDED**
13 CITIBANK, N.A., a Corporation,
   CITIGROUP INC, a Delaware Corporation, Judge: Honorable Brian C. Wimes
14 JH MET SUBSIDIARY B LIQUIDATING
   TRUST, a Legal Trust Type Corporation,
15 DAVID R GAMACHE, individual capacity as
   an attorney,
16 STATE OF MISSOURI,
   CHIEF JUSTICE PAUL C. WILSON, is his
17 official capacity as Courts Administrator,
   MISSOURI OFFICE OF COURT
18 ADMINISTRATION, a State entity,
   KATHY S. LLOYD, official capacity as State
19 Court Administrator,
   STONE COUNTY, a State entity,
20 MECHELLE LEBOW, official capacity as
   Stone County Court Clerk,
21 IN RE JUDGE ALAN MARK
22 BLANKENSHIP, in his Exercise of
   Judgement at Federal Law capacity,
23 JUDGE DAVID A. COLE, official
   administrative capacity as Presiding Judge of
24 Stone County, and
   Sheriff Doug Rader, official capacity Stone
25 County Sheriff.
26
27              Defendants.
28

# I. NATURE OF THE CASE

1.      Plaintiffs Jason A Jensen ("JENSEN"), individually on behalf of himself, brings this action against Contract Defendants:

      a.      Citibank, N.A. with regards to the Contract and Citigroup Inc with regards to the Trademark, and under the Trademark, are used interchangeably as ("CITI")

      b.      JH MET SUBSIDIARY B LIQUIDATING TRUST ("JH MET"), and

      c.      David R Gamache ("GAMACHE"),

(hereinafter referred to collectively as "Contract Defendants," or individually by their respective names or aforementioned designations).


FURTHERMORE, JENSEN brings this action against the following State Defendants:

      d.  State of Missouri,

      e.  Chief Justice Paul C. Wilson ("WILSON"), is his official capacity as Missouri Courts Administrator,

      f.  Missouri Office of State Court Administrator ("OSCA"), a State entity,

      g.  Kathy S. Lloyd ("LLOYD"), official capacity as State Court Administrator,

      h.  Stone County ("STONE"), a State entity,

      i.  Mechelle Lebow ("LEBOW" and/or "COURT CLERK"), official capacity as Stone County Court Clerk,

      j.  IN RE Judge Alan Mark Blankenship ("BLANKENSHIP"), in his Exercise of Judgement at Federal Law in the 39th District of Missouri Courts,

1          k.   Judge David A. Cole ("COLE"), official administrative capacity as Presiding

2                Judge of Stone County Court(s), and

3          l.   Sheriff Doug Rader ("RADER"), official capacity Stone County Sheriff.

4                (hereinafter referred to collectively as "State Defendants," or individually by

5                their respective names or aforementioned designations).

6

7

8      2.       JENSEN will be asserting that Citibank, N.A. did violate South Dakota Law, as

9 designated as pertaining laws by the contract, S.D. Codified Laws § 57A-2-210 ("(1) A party

10 may perform his duty through a delegate unless otherwise agreed or **unless the other party has**

11 **a substantial interest in having his original promisor perform or control the acts required**

12 **by the contract.** No delegation of performance relieves the party delegating of any duty to

13 perform or any liability for breach." [emphasis added]) S.D. Codified Laws § 57A-2-210 is the

14 State's enactment of the Uniform Commercial Code ("UCC") 2-210. In addition, when Citibank,

15 N.A. assigned all rights and duties to JH PORTFOLIO DEBT EQUITIES LLC (predecessor of

16 assignment to JH MET) with an active and surviving ARBITRATION AGREEMENT, as

17 contractualized by CITI, without any controls over the ARBITRATION AGREEMENT's

18 PROVISIONS after assignment, equate to Naked Licensing of the Citi/Citibank Trademark.

19      3.       JENSEN will also be asserting that JH MET did violate the Contractual

20 Agreements (Breach of Contract) surrounding the Arbitration Agreement by refusing to Arbitrate

21 and attempting to get a Default Judgement, or a Judgement Procedurally and outside the Merits

22 of the Case, waiving such Arbitration by Actions, and Violating the Fair Debt Collection

23 Practices Act ("FDCPA") by using the Missouri Stone County Court as a weapon of infliction

24 and JENSEN's Due Process.

25

26

27

28

1    4.     JENSEN will assert in this action, that when GAMACHE substituted the

2    Affidavit Return of Summons ("Return of Service"), with a Statement of Hearsay, GAMACHE

3    did violate the FDCPA in an extremely outrageous and damaging way. GAMACHE, by using his

4    experience of a Court Officer, intimacy with the Clerk of Court, and the Status of his Bar

5    License, to practically "Hack" the Judicial System to JENSEN's detriment and suffering.

6    Furthermore, despite the fact the Return of Service did not qualify as what it purported to be by

7    law, no Notice or Service was given to JENSEN for the document attempting to conceal the

8    nature of the Return of Service. This Act by GAMACHE also implements the Clerk of Court

9    into the Due Process Violation JENSEN contends defrauding the Court and JENSEN in such a

10   matter amounted to.

11

12       5.     JENSEN will assert JH MET is responsible for the actions of their Attorney of

13   Record. GAMACHE is responsible for his own actions. Under S.D. Codified Laws § 57A-2-210,

14   UCC 2-210, CITI is responsible for the Breach of Contract and Failure to Perform under the

15   Arbitration Agreement. However, CITI lacks the Arbitration Agreement it Assigned in its

16   entirety to JH PORTFOLIO DEBT EQUITIES LLC. Furthermore, it seems completely

17   undecided if the Arbitration Agreement reaches claims of Trademark Abandonment, complicated

18   further by the lack of ability for Congress and the Courts to Delegate what Public Policy is; a

19   subject intimately and of paramount importance to the application of Common Law Trademark

20   Rights and Duties.

21       6.     This complaint seeks Judgement of Declaratory Relief from the Contract

22   Defendants that the Assignment of said Account to JHMET, the Subject Matter of the Stone

23   County Court Case, is null and void under S.D. Codified Laws § 57A-2-210 for their failure to

24   Arbitrate creating JENSEN's "substantial interest in having his original promisor perform or

control the acts required by the contract"; that CITI did Naked License the use of the Citi/Citibank Trademark(s) to JH MET through JH PORTFOLIO DEBT EQUITIES LLC (now defunct?) as previous successor of interest, et cetera, in the application of the ABITRATION AGREEMENT of CITI's construction. The construction of this Arbitration Agreement imposes Duties on CITI, including the payment of ALL Arbitration and Arbitrator Fees in a dispute other than collection, and then, in collection, an Amount determined by the Rules of Arbitration but more than zero dollars, was not automatically Assigned to JH PORTFOLIO DEBT EQUITIES LLC by Contract, meaning it is Governed by and Subject to South Dakota's Uniform Commercial Code and other South Dakota and Federal Law. This complaint additionally seeks damages for violations of the FDCPA, Breach of Contract, and other Equitable Relief. Finally, this complaint seeks treble and punitive damages for intentional infliction of emotional distress due to the Outrageous Nature of the Violations from Contract Plaintiffs JHMET and GAMACHE, resulting in the emotional disturbance of a Disabled and Mentally Ill person, distress of being excluded from his Government and Court, and creating an environment very conducive to paranoid thinking.

       7.     This complaint seeks Judgement of Declaratory Relief from the State Defendants regarding the Access of State Court Records. The legal challenge is a complicated one. The COURT CLERK is responsible for Providing Court Records in a traditional and historical Court Administration. However, the Office of Court Administrator has designed and engineered the State's Digital interface for the Court known as CASE-NET. CASE-NET is a database, or structured computer dataset where data elements are given meaning and searching/indexing capabilities, regarding the Court. To function properly, or to the standard set by the Court, each document not only has document metadata, such as who filed, what, at what time, and whether

the document is a Complain, Summons, Motion, Order, or other Legal Instrument, but the location to access the actual document. All these Document Metadata entries are associate with another dataset for the Case, which would then have Case Metadata, such as Case Number, Judge Assignment, Status, and Party Information. Based on the Design period it is extremely likely that the said database is amongst the following technologies Microsoft SQL Server, Oracle, or an Open Source solution such as, MySQL, Postgre, or another SQL based database backend. Given that the Office of State Administrator has the data perfectly cataloged in such an organization, the Technology give the State the ability to run Queries to the Dataset. For example, one could request all the Return of Service Documents from all cases filed from 1/1/2020 to 5/31/2022 with a statement similar to "SELECT * FROM CaseDocuments JOIN Cases WHERE CaseDocuments.CaseId = Cases.Id AND Case.DateFiled > 1/1/2020 AND CaseDocuments.DocumentTypeId = ReturnOfService" (an example of a SQL or Structured Query Language). Given this massive technical ability of the CASE-NET system JENSEN is given no access to ANY documents and merely a Document List given a Case Number.

       8.     During the course of Stone County Court Case 21SN-AC00123, JENSEN requested all the Cases heard by Judge BLANKENSHIP on January 7th, 2022. This list is required to be made to Stone Count Local Court Rule 8.1 with the directive "The Circuit Clerk of Division One of each county shall prepare a trial docket of all civil and criminal cases that are scheduled to be heard or set for trial on the next Law Day" and/or said list wanted is given to the Stone County Sheriff's Office/Bailiffs for each Law Day who checks the list for your case during security screening at entering of the Stone County Justice Center. The COURT CLERK denied such request, on January 28th 2022 at 8:38AM by email, as "confidential" because it "contains confidential information and it is for Court use only[.]"

9.     Given the Nature of 18 USC 1983 complaints regarding a "class of one" JENSEN requested exactly the above scenario from the CLERK OF COURT. All Return of Service Documents for 2 prior years, specifically any document where the Return of Service was filed as a Return but blank and a Statement was added by Opposing Council, and that Statement, which was entirely a hearsay recount of a phone call, in this case between the Plaintiff's Attorney and "Jennifer" of the Stone County Sheriff's Office, instead of Sheriff's Deputy or Agent signature or a notarized signature of a special process server to complete the required Affidavit. Not only did such a request not meet with a Quotation, the COURT CLERK responded that for the records JENSEN would be charged "research is $.20 per minute, copies are $.25 per page." So despite the fact the Missouri Courts have a system that is capable of providing the requested information as a Structured Query, or JENSEN could do his own research and copying with access to CASE-NET, the Court Clerk is going to charge fees outside the range of JENSEN discretionary spending to understand the nature of GAMACHE's forged Return of Service, how often it is performed, and by what Lawyers, and if there was a Conspiracy to Discriminate by using the STONE Court as an instrument to harass JENSEN. Furthermore, JENSEN has a Common Law Right to Access to the Court Records, then JENSEN has a Common Law Right to the digital version of the Court and its conveniences as well and the State cannot assign the Court's tasks to another entity to complete with digital technology escaping that Common Law Right of Access.

10.     JENSEN will be asserting that the State Defendants MISSOURI, STONE, LEBOW, COLE, and RADER, did violate Title II of the Americans with Disability Act ("ADA") by refusing "Special Accommodations" (Reasonable Accommodation) surrounding the use of an electronic disability device, JENSEN's Cell Phone as Expertly Configured to Aide his Disability, in the Stone County Justice Center. JENSEN had no intention of entering any

Courtroom with said device and was at the Stone County Justice Center for a Meeting called by COLE to address the Complaint of Discrimination by the STONE COURT CLERK regarding the tone and level of JENSEN's voice on the Phone while requesting Services from the COURT CLERK. STONE and COURT CLERK maintain that the COURT CLERK and its agents, do not have to provide accommodations regarding Bipolar Behavior of "Yelling" on the phone. JENSEN has suggested a volume control for the phone on the Clerk's End. The failure of the COURT CLERK to provide JENSEN accommodations, the premature conclusion of the phone calls, and Discrimination of Services regarding certain COURT CLERK subordinates and refusal to provide services resulting in the most extreme Bipolar displays.

## II. JURISDICTION and PARTIES

11.   This Court has Jurisdiction under 28 U.S. Code § 1331.

12.   This Court has Jurisdiction under 28 U.S. Code § 1332.

13.   This Court has Supplemental Jurisdiction under 28 U.S. Code § 1367, having met the requirements of § 1331 and § 1332.

14.   Parties-

Plaintiff, Jason A Jensen, Pro Se, is a transient United States Citizen living in mobile housing going from Park to Park (Federal, State, or Private) to avoid the discrimination associated with Mental Illness, resident of Florida, Pasco County, has been seeking Texas Residency with issues surrounding a Legal Address. JENSEN spent the December to May in Rockport Texas and only left because of the Trial set on the Contract Case. JENSEN asserts his Legal Address is: 2186 Jackson Keller Rd, Ste 1097, San Antonio, TX 78213

Defendants:

1. Citibank, N.A. ("CITI") is a National Associated Bank, the CITI, registration number 73207983, and CITIBANK Trademark, registration number 72070290, is Registered to CITIGROUP INC. CORPORATION DELAWARE, 388 Greenwich Street, New York, New York, 10013.

2. JH MET SUBSIDIARY B LIQUIDATING TRUST

3. David R Gamache is a professional Attorney at Law, Missouri Bar MBE# 34112, with a central office at 1000 Camera Ave Suite A, St. Louis, MO 63126.

4. State of Missouri is a State with the United States of America, the Missouri Attorney General's Address is Missouri Attorney General's Office, Supreme Court Building, 207 W. High St, P.O. Box 899, Jefferson City, MO 65102

5. Chief Justice Paul C. Wilson is a Missouri Supreme Court Justice with a principle place of operation at 207 West High Street, Jefferson City, Missouri 65101.

6. Missouri Office of State Court Administrator is a Judicially created Governmental Entity located at 2112 Industrial Drive, Post Office Box 104480, Jefferson City, MO 65110.

7. Kathy S. Lloyd is the State Court Administrator executing the functions of the Missouri Office of State Court Administrator, principal place of business is the Office of State Court Administrator located at 2112 Industrial Drive, Post Office Box 104480, Jefferson City, MO 65110.

8.  Stone County is a political subdivision of the State of Missouri, Offices located at Stone County [Historical] Courthouse, 108 East 4th Street, Galena, Missouri, 65656.

9.  Mechelle Lebow is the elected Stone County Court Clerk in Missouri, principal place of operation is the Stone County Justice Center located at 110 S Maple St, Galena, MO 65656.

10. IN RE Judge Alan Mark Blankenship is an Associate Judicial Officer in the State of Missouri for the 39th Judicial District, Stone County, principal place of operation is the Stone County Justice Center located at 110 S Maple St, Galena, MO 65656.

11. Judge David A. Cole Blankenship is the Presiding Judicial Officer in the State of Missouri for the 39th Judicial District, Stone County, principal place of operation is the Stone County Justice Center located at 110 S Maple St, Galena, MO 65656.

12. Sheriff Doug Rader is the elected Stone County Sheriff, principal place of operation is the Stone County Justice Center located at 110 S Maple St, Galena, MO 65656.

15.  This case arises from the actions taken by Defendants ultimately culminating and causing rise of action in Stone County, Missouri. Therefore, jurisdiction of this court is proper.

### III. FACTUAL ALLEGATIONS

**JENSEN as a Qualified Individual under the American's with Disabilities Act**

16.     JENSEN has been Diagnosed Bipolar, in various degrees, as well as other Mental Health Diagnosis, many equally, some more severe in affliction.

17.     JENSEN collects Social Security Disability Insurance for said Mental Health Disabilities and is medically insured by Medicare.

18.     JENSEN suffers from a disorder often described as an emotional mental health or behavioral health disorder which causes him to act inappropriate towards others based on triggers. For example, the nature of a telephone, how the same number can result in multiple contacts of no personal memorial purpose, such as calling a COURT CLERK's office and getting any number of persons to deal with, aggravated by years of being forced to wait on hold, press 1 for language followed by tiers of tiers of prompts to route the call, and finally, please, in a short phrase, let me know the reason for the telephone call so this computer which cannot understand intent expressed in language, can attempt to route the call using a selection based on spoken keywords. Not to mention, the scam and telemarketing calls. So, to JENSEN, the phone has become so impersonally irritating to his emotional state that often times, when otherwise extremely stressed, JENSEN acts out in tone of Voice, Pitch, and Attenuation. In the present case, JENSEN had been forced to remain in the area of Stone County in order to "secure" a Motion to Compel Arbitration which JH MET was required to voluntarily abide by under Contract, remember JENSEN travels often to avoid discrimination which is more rampant today that racism in the 60's. People actually talk on the News about what "we", as a country, should be doing about the "mentally ill", like the one that recently rampaged in violence, as if they are all the same and they all need the same prescription to solve the "problem" which is them. JENSEN filed the Motion to Compel Arbitration on 06/02/2021 which was not granted by BLANKENSHIP until 09/10/2021, roughly 3 months later, but nothing was more stressful than

having to leave a camp JENSEN paid to be until May 1ˢᵗ, 2022 with opportunity to stay much longer, drive 1000 miles north from Rockport Texas to Stone County Missouri because after the Motion to Compel Arbitration was Granted, BLANKENSHIP issued an order of Default Judgement on 01/07/2022 despite any motions by JH MET based on a failure of arbitration, without any Court Record except the Order, seemingly vacating the Arbitration Agreement based on a failure to obey State Court Rules regarding Appearance to a Court that was forbidden by Agreement. It does seem apparent that JH MET requested the Default Judgement and provided a machine typed Order to be signed by Judge BLANKENSHIP. However, on 01/27/2022, BLANKENSHIP vacated the Default Judgement Order "to avoid manifest injustice" and set the Case for Case Review. Seemingly because of a failure to appear to a Court that had no Jurisdiction to the Claims as the Arbitration Agreement "[replaced] the right to go to court, have a jury trial or initiate or participate in a class action." And such right is exercised by Filing a Motion to Compel Arbitration, nothing about a Stay, per the Arbitration Agreement, page 10, right column, second paragraph, with "to choose arbitration, a party may file a motion to compel arbitration in a pending matter" which seems to imply duty of compliance of the option exercised. So, JENSEN was forced to leave early, drive 1000 miles at $5.25/gallon of Diesel, to attend a "Bench Trial" set for 05/06/2022 at 11:00 AM. JENSEN was also stuck in a severe storm which flipped 3 commercial semi trucks of around 80,000 pounds along JENSEN's route, when JENSEN called the COURT CLERK and was "Yelling" at the COURT CLERK. The CLERK hung up 3 times, refused to assist claiming on LEBOW could assist, and refused accommodations. Then the Stone County Court Case was dismissed the day before Trial when it became apparent that JENSEN was going to Appear for Trial. Oh, and the trip had exhausted a huge portion of JENSEN monthly disability benefits. Then as part of the Complaint Process as

required by Title II of the Americans with Disabilities Act, was given 3 hours' notice, during a

call he initiated, of a Meeting, where Accommodations of JENSEN cell phone was denied

without reason, forced to wait outside in cold wet conditions with no place to sit, after the agreed

12 noon appointment, for approximately 2 hours 30 minutes, then COLE denied the use of

JENSEN's phone again despite Missouri Law presuming government meetings are open and

should be allowed to be recorded. RADER also exemplified intimidation of JENSEN's

attendance by screaming at JENSEN as an invitation. Also, remember the COURT CLERK

contends if JENSEN yells he can be denied service and separated from staff, but Sheriff RADER

can yell at JENSEN.

     19.     JENSEN is, and apparently will forever, as JENSEN's Father lives at 6

Arrowhead Rd, Kimberling City, Missouri, 65686, be responsible for responding to debt cases

under the FDCPA, which are served to JENSEN's father despite JENSEN not residing at his

father's house, to Cases filed with Stone County, so JENSEN is prepared to return to Stone

County Court for Services, Programs, Functions, and Official Purposes. Furthermore, should

JENSEN suffer a medical emergency surrounding Civil Commitment of a Mentally Ill Person

while visiting his father, JENSEN would absolutely be attempting to file a Writ of Habeas

Corpus in Stone County, and reserves access, and has a fundamental common law and

constitutional right, to the Court while visiting and assisting a friend for Records and Record

Requests.


**Nature of CITI's Arbitration Agreement, Selection of Legal Forum, implied Public Policy**

**Implications of Assigning a Contract with Arbitration Agreement Governed by UCC 2-210**

**when Said Arbitration Agreement includes obligation to pay fees while CITI operates**

**under Trademarks**

20.     CITI did construct a Contract to engage in Federal Interstate Commerce in Lending and Bank Card type Loans, where CITI specified the selected forum of South Dakota law, implemented an Arbitration Agreement, and Offered said Loan Products and Services under the CITI and CITIBANK Trademarks.

21.     CITI assigned rights to an Account it alleged was JENSEN's to JH Portfolio Debt Equities on April 28th 2017. The Assignment used the language "the Bank does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver" in the assignment. Which was later assigned to JH MET by liquidation on May 20th, 2019. CITI never notified JENSEN nor considered JENSEN's interests in enforcement of the Arbitration Agreement duties during assignment. There is little doubt that a Debt Collection Agency has affinity to Arbitration especially if said agreement requires the Contract Assignee to pay for Arbitration Fees.

22.     Under UCC 2-210, as codified by S.D. Codified Laws § 57A-2-210, CITI cannot assign liability for Breach of Contract regarding the Arbitration Agreement, especially since the Arbitration Agreement is a Debt Provision payable upon Arbitration Demand and/or Motion to Compel Arbitration. JENSEN has the contractual expectation that CITI will enact the Arbitration Agreement in its spirit, which is an offer of excess to agree to pay for all the arbitration fees save one claim type collection of debt. An assignment of said account to an entity that operates with less than clean hands severely impede JENSEN expectations, executing the provisions or rights of, and the meeting of the minds for the Arbitration Agreement.

23. Furthermore, the Contract Assigned is one with considerable bargaining advantage, such as the Right to Amend/Alter the Contract, Designation of Law, and the Captive Audience

aspects of being a Debtor. While in extreme default on payments, the contract basically closes all

aspects except the Right to Collect Amounts Due Immediately, any Claim surviving Statute of

Limitations, perhaps the Right to Amend/Alter, and the Arbitration Agreement. A proposition

JENSEN would not agree to with JH MET and only agreed to with CITI as a National

Associated Bank operating under Trademarks and Federal Regulation.

24.    CITI assigned the Arbitration Agreement without Contractual Rights Regarding

Quality Controls and Oversight.

25.    CITI failed to ensure Quality of Service with regards to the Arbitration

Agreement. Surely most of CITI's customers have had a different experience with the use of the

Arbitration Agreement while an Alleged Account Holder of CITI's financial Services.

26.    CITI shares liability for JH MET's refusal to Arbitrate under the Agreement as

Governed by S.D. Codified Laws § 57A-2-210.

26.    JENSEN has no firm knowledge of said account and as such can confirm nor

deny the account without more details, such as purchases made, to said account.


**JH MET, GAMACHE, COURT CLERK, and IN RE BLANKENSHIP Activities Related**

**to the Federal Arbitration Act, FDCPA, and Due Process**

27.    JH MET did retain GAMACHE as an Attorney at Law for Collection of Debt.

28.    JH MET is a Debt Collection Agency under the FDCPA which purchases bad

debt for the sole purpose of recovery of bad debt.

29.    GAMACHE is an Attorney that specializes in Debt Collection under the FDCPA.

30.    JH MET was assigned a CITI account with an Arbitration Agreement.

31.     On June 3rd, 2021, JH MET through GAMACHE did request a continuance despite the Arbitration Agreement. JH MET never responded to the Motion to Compel Arbitration which was filed 1 day after the fraudulent Return of Service was filed with the Court by GAMACHE.

32.     On June 1st, 2021, GAMACHE did electronically file a blank Summons with a quasi-legal document with the Statement "As per a phone call to Jennifer at Stone County Sheriffs Office, the attached summons was served on May 18, 2021. The summons was accepted by Jack, the defendants father, at 10:30 am. Upon receipt in our office, the signed copy will be filed with the Court." Signed GAMACHE. JENSEN was not served a copy of the attachment nor is there a certificate of Service on said Document. The document includes language that the Document is an "attempt to collect debt".

33. The resulting public Court Docket entry was "Family Member/Roommate Served: Document ID - 21-ADSM-317; Served To - JENSEN, JASON A; Server - SO STONE COUNTY-GALENA; Served Date - 18-MAY-21; Served Time - 10:30:00; Service Type - Sheriff Department; Reason Description - Served; Service Text - By leaving with Jack, Father" which gives no indication of a statement of hearsay used to "bypass" the process of Legal Service. Legal Service is a part of Due Process. JENSEN only learned of such document when JENSEN requested it to see what Sheriff Deputy had served JENSEN.

34.     The use of intimate knowledge of the COURT CLERK, who retains absolute immunity in the filing of documents which cannot extend to GAMACHE in the extent GAMACHE conspired with the COURT CLERK, willingly or unwillingly, knowingly or not, to deprive JENSEN's Due Process to expediate the attainment of Judgement by STONE Court. IN RE BLANKENSHIP also enjoys Absolute Immunity in setting a Bench Trial Date after a Motion

to Compel Arbitration was Granted which does not translate to GAMACHE and JH MET in getting an off record judicial agreement to a Default Judgement vacated as "manifest injustice" then requesting a Bench Trial all to Voluntarily Dismiss it one day before Trial at 3 pm electronically but mailing a copy to JENSEN, so no real notice.

35.     No record of the true Summons was ever filed with the Court. Its location is unknown. JENSEN attempted to locate it by contacting the COURT CLERK and the Stone County Sheriff's Office. JENSEN doubts its authenticity. JENSEN doubts the phone call ever occurred. Jack, who's legal name is, actually, John Jensen, JENSEN's Father, never accepted Service unless throwing a document at Jack accounts for Service. The person was not wearing a Sheriff's uniform or operating a Sheriff's vehicle. Jack, or John Jensen, has a policy of handing personal affairs with Jack Jensen while retaining the legal name John Jensen.

36.     There is no reason the Sheriff would break chain of custody, returning the Summons to GAMACHE in St Louis when the Sheriff is required to submit the Completed Summons with the COURT CLERK in STONE. When a Sheriff returns a summons, notarization is not required.

37.     JENSEN was defrauded into thinking service had been properly completed by GAMACHE and JH MET.

38.     JENSEN was required to drive from Rockport, Texas to Galena, Missouri to defend against an action set for Trial after a Granted Motion to Compel Arbitration spending approximately $600 in Diesel Fuel, $100 in Food and Drinks, and $400 Gambling losses since Casinos were some of the only places to stay the night without expense or reservation with a 33 foot Motorhome pulling a car dolly and car.

39.    JENSEN has suffered Mental Health, and agitation of existing Mental Health,
issues as a result of the treatment in the attempt to Collect the Debt. This includes sleep
disturbances, mood disruption, stress, depression, and outbursts which the COURT CLERK can
attest to.

**State Defendants Actions Regarding Access to Court Records and Title II of the Americans with Disabilities Act**

40.    COURT CLERK did deny a list of cases heard by BLANKENSHIP on January
7th, 2022 in an email dated January 28th, 2022 as "confidential".

41.    COURT CLERK did refuse accommodations regarding JENSEN's request with
his mood while making requests by telephone.

42.    COURT CLERK did memorialize that refusal by suggesting JENSEN should only
call when his mood disorder was not afflicting JENSEN in an official letter dated May 4th, 2022.

43.    COURT CLERK did attempt to refuse the Appeal Process of the Title II ADA
mandated complaint process by attempting to refuse JENSEN request for appeal as "incomplete"
despite no form, or structured process to follow in attempting the Appeal.

44.    COLE did refuse the Open aspect of all meeting in government entities under the
Sunshine Act of Missouri. COLE denied Accommodations on May 23rd, 2022 regarding the use
of JENSEN's personal disability device his Cell Phone within the Meeting. COLE did require
JENSEN to wait outside in cold rain with no where to sit from 12 noon to approximately 2:28
pm on May 23rd, 2022.

45.    RADER did refuse JENSEN's accommodation request to enter Stone County
Justice Center with his disability device his Cell Phone on May 23rd, 2022. RADER did

intimidate JENSEN by yelling at him that the "deal" was that JENSEN could only meet with COLE in a Courtroom and without his disability device.

## IV. CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Violations of the FDCPA

46.    JENSEN incorporates paragraphs 3-5, and " JH MET, GAMACHE, COURT CLERK, and IN RE BLANKENSHIP Activities Related to the Federal Arbitration Act, FDCPA, and Due Process" paragraphs 27-35.

47.    The behavior by GAMACHE and JH MET complained about is in Violation of 15 U.S. Code § 1692d. As harassment and abuse of a debtor in the Collection of a Debt.

48.    The behavior by GAMACHE and JH MET complained about is in Violation of 15 U.S. Code § 1692e. A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

49.    The FDCPA allows for recovery of Statute Damages in an amount up to $1,000 on top of any actual or other kind of damages.

## SECOND CAUSE OF ACTION

### 42 USC 1983 claims against JH MET and GAMACHE

47.    JENSEN incorporates paragraphs 3-4, 9, and "JH MET, GAMACHE, COURT CLERK, and IN RE BLANKENSHIP Activities Related to the Federal Arbitration Act, FDCPA, and Due Process" paragraphs 27-35.

48.    JH MET and GAMACHE attempted and succeeded in circumventing elements of JENSEN's Due Process regarding Service of Process within the 14th Amendment of the United

States Constitution under the Color of State Law by colluding or conspiring with the Court Clerk, or deceiving the COURT CLERK, to accept a Summons not signed, with a Statement of Hearsay, as completed.

## THIRD CAUSE OF ACTION

**Nullification of the Assignment of Contract to JH MET for failure to Arbitrate Under UCC**

**2-210**

49.   JENSEN incorporates paragraphs 2,5,7,21, and 22.

50.   Under South Dakota Law, JENSEN has a Right to Contractual Performance under the Arbitration Agreement that affects CITI's ability to assign the Contract under 57A-2-210.

## FOURTH CAUSE OF ACTION

**CITI's Abandonment of trademarks by Naked Licensing Trademarked Arbitration**

**Agreement Within Trademarked Financial Services**

51.   JENSEN incorporates "Nature of CITI's Arbitration Agreement, Selection of Legal Forum, implied Public Policy Implications of Assigning a Contract with Arbitration Agreement Governed by UCC 2-210 when Said Arbitration Agreement includes obligation to pay fees while CITI operates under Trademarks" Paragraphs 20-26; 2, and 6.

52.   CITI, by selecting the South Dakota Legal Forum which enacted 2-210 of the UCC, in combination with Common Law Trademark duties, where the Assignment of CITI's contract was tantamount to a Licensing Agreement without Quality Controls of the Arbitration Agreement amounted to Naked Licensing Abandonment of the Mark.

## FIFTH CAUSE OF ACTION

**Violations by State Defendants of the Americans with Disabilities Act, Title II, regarding**

**Due Process and Complaints of Discrimination**

53.     JENSEN incorporates "JENSEN as a Qualified Individual under the American's with Disabilities Act" paragraphs 16-19, "State Defendants Actions Regarding Access to Court Records and Title II of the Americans with Disabilities Act" paragraphs 40-45, and 7-10.

54.     State Defendants LEBOW, COLE, RADER, STONE, and MISSOURI, did refuse mandatory ADA Title II requirements surrounding Accommodations and Complaint Procedures.

## SIXTH CAUSE OF ACTION

**Access to Court Records**

55.     JENSEN incorporates paragraphs 7,8,9, and 40.

56.     JENSEN has a common law Right to access Court Documents.

57.     The scheme implemented by State Defendants MISSOURI, WILSON, OSCA, LLYOD, STONE, LEBOW, and/or COLE, has resulted in a computer system operated by the Missouri Court that has all Court Records, but is excluded in its entirety from public access beyond case and document metadata.

## SEVENTH CAUSE OF ACTION

**Declaratory Relief by Writ of Mandamus IN RE BLANKENSHIP regarding the**

**enforcement of Arbitration Agreements under U.S. Code of Statutes Chapter 9**

58.     JENSEN request this Court take JUDICIAL NOTICE AND RECORD of all Stone County Court activities, filings, orders, and records, of 21SN-AC00123[-01]'s Docket. JENSEN reincorporates paragraphs 18,34, and 38.

59.     9 USC et al Governs the Federal Arbitration Act.

60.     9 U.S. Code § 2 titled "Validity, irrevocability, and enforcement of agreements to arbitrate" requires that an Arbitration Agreement be honored as Agreed, preempts State Law, and once BLANKENSHIP granted the Motion to Compel Arbitration, § 2 forbid the Default Judgement entered on January 7th, 2022 and the setting of a Bench Trial on March 7th, 2022 for May 6th, 2022 for failing to appear to a Court Case where all Claims were covered by an Arbitration Agreement. No motions were filed by JH MET to vacate the Order to Compel Arbitration. No Documents was submitted to the Court or JENSEN by JH MET that Arbitration was initiated and Defaulted by JENSEN for refusal to participate in Arbitration or Failure to Pay Fees.

## **Punitive Damages**

33. The conduct of Contract Defendants JHMET and GAMACHE described above is outrageous. Defendants' conduct demonstrates a willful reckless disregard for the Constitutional Rights of Others. The acts and omissions described above were willful and performed with actual or implied malice. Punitive and exemplary damages are therefore appropriate and should be imposed in this instance.

## **V. PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for a judgment against Defendants for:

1. Injunctive and equitable relief as the Court deems appropriate including:

1    RADER from enforcing Courtroom Rules to the Entirety of the Stone County Justice

2    Center,

3    2.  Compensatory damages to be paid by all Contract Defendants, according to proof at trial;

4    3.  Punitive damages as the court deems appropriate;

5

6    4.  Costs of this lawsuit; and

7    5.  Any other relief as the court deems appropriate.

8    Dated: June 30, 2022                                  Jason A Jensen

9                                                          //s/JasonAJensen

10                                                         Pro Se Plaintiff

11

12                                                         2186 Jackson Keller Rd
                                                           Ste 1097
13                                                         San Antonio, TX 78213
                                                           PH: 402-598-1285
14                                                         Email: jasonajensen@gmail.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

JASON ADAM JENSEN,　　　　　)
　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　)
　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　)　　　Case No. 6:22-CV-03140-BCW
　　　　　　　　　　　　　　　)
CITIBANK, N.A., et al.,　　　　　)
　　　　　　　　　　　　　　　)
　　　　　　Defendants.　　　　 )

## ORDER

Before the Court are Plaintiff's Application for Leave to File Action Without Payment of Fees (Doc. #1) and Plaintiff's motion for hearing (Doc. #4). The Court, being duly advised of the premises, grants in part and denies in part said motion.

On June 1, 2022, Plaintiff Jason Adam Jensen, pro se, filed an Application for Leave to File Action Without Prepayment of Fees. (Doc. #1). On June 10, 2022, the Court issued an Order finding Jensen qualified to proceed in forma pauperis based on economic need but directed Jensen to file an amended proposed complaint. 28 U.S.C. § 1915(e)(2)(B)(i-iii) (Court may grant leave to proceed in forma pauperis only if it finds the case is not frivolous, malicious, fails to state a claim, or otherwise seeks monetary relief against a defendant who is immune).

On June 30, 2022, Jensen timely filed an amended proposed complaint. (Doc. #5). The Court thus considers Jensen's motion to proceed in forma pauperis with reference to the proposed amended complaint (Doc. #5) to determine whether the Court might properly grant Jensen's request to proceed without prepayment of fees under § 1915. Because Jensen is proceeding pro se, the Court liberally construes the proposed complaint's factual allegations. Estelle v. Gamble, 429 U.S. 97, 106 (1976).

1

In reviewing the allegations of the proposed amended complaint along with public records available on Missouri Case.net for the 39th Judicial Circuit Court of Stone County, Missouri, the Court construes Jensen's claims as stemming from state case number 21SN-0AC00123 ("the state case"). Stutzka v. McCarville, 420 F.3d 757, 760 n.3 (8th Cir. 2005) (Court may take judicial notice of judicial opinions and public records); (Doc. # 5-1 at 22).

Broadly construing Jensen's factual allegations as set forth in the proposed amended complaint, Jensen had a contract with named defendants Citibank, N.A. and/or Citigroup Inc. These defendants assigned their contract rights to named defendant JH Met. Gamache is an attorney who represented JH Met in the state case. JH Met filed the state case against Jensen, which came before Stone County Judge Blankenship.

On January 7, 2022, Judge Blankenship entered a default judgment against Jensen. Jensen disputes he ever received services of process of JH Met's claims against him in the state case and asserts Gamache conspired with the Stone County Clerk's Office, Lebow as Court Clerk, and Sheriff Rader to fraudulently represent that Jensen had been served. The default judgment was subsequently set aside on January 27, 2022, and JH Met's claims against Jensen were set for bench trial on May 6, 2022. On May 5, 2022, JH Met voluntarily dismissed the petition. The docket reflects that Jensen appeared for the May 6, 2022 bench trial "in person having traveled here from Texas. Defendant is advised the Plaintiff has dismissed the case. Plaintiffs are directed to submit this case to arbitration in accordance with the cardholder agreement. Case dismissed without prejudice." JH Met Subsidiary B Liquidating v. Jason A. Jensen, No. 21SN-A00123-01, https://www.courts.mo.gov/casenet/cases/searchDockets.do (May 6, 2022).

In the proposed amended complaint, Jensen seeks compensatory and punitive damages, as well as declaratory relief, through the following claims. In Count I, Jensen alleges violations of §§

1692d and 1692e of the Fair Debt Collection Practices Act (FDCPA) against JH Met, Gamache, Lebow, and Judge Blankenship. In Count II, Jensen alleges violation 42 U.S.C. § 1983 against JH Met and Gamache for violating Jensen's due process rights. In Count III, Jensen seeks nullification of the Citibank defendants' assignment of a contract to JH Met. In Count IV, Jensen seeks a declaration of trademark abandonment as to the Citibank defendants' trademarked arbitration agreement. In Count V, Jensen alleges the State of Missouri, Stone County, Stone County Judge Cole, Lebow, and Sherriff Rader violated the Americans with Disabilities Act "surrounding accommodations and complaint procedures." In Count VI, Jensen alleges the State of Missouri, Chief Justice Paul Wilson, the Missouri Office of Court Administration, Kathy Lloyd in her official capacity as Missouri Office of State Courts Administrator, Stone County, Lebow, and Judge Cole improperly denied Jensen access to court records. Finally, in Count VII, Jensen seeks a declaratory judgment by writ of mandamus against Judge Blankenship to compel enforcement of an arbitration agreement.

As set forth above, the Court may not grant Jensen leave to proceed without prepayment of fees for claims that are frivolous, malicious, fails to state a claim, or that seeks monetary relief against a defendant who is immune. 28 U.S.C. § 1915(e)(2)(B)(i-iii).

**A. Justice Wilson, Judge Blankenship, and Judge Cole are immune from suit, and Count VII is otherwise dismissed.**

Jensen's proposed amended complaint seeks monetary relief against Stone County Judges Blankenship and Cole, as well as monetary relief against Missouri Supreme Court Chief Justice Paul Wilson. However, Missouri recognizes judicial immunity, which absolutely "protects conduct which is intimately associated with the judicial phase of the judicial process." Stalnacker v. Dolan, 631 S.W.3d 658, 661 (Mo. Ct. App. 2021). Jensen's allegations for relief against Judge

3

Blankenship stem from Judge Blankenship's rulings in the state case, such that Judge Blankenship is immune from suit through judicial immunity. Judge Blankenship is thus dismissed as a party.

Moreover, with respect to Count VII seeking declaratory relief against Judge Blankenship only, the state court record reflects that the default judgment entered against Jensen was set aside on January 27, 2022, and JH Met subsequently dismissed its petition against Jensen in favor of arbitration. Thus, Jensen has received the relief sought in Count VII under the circumstances of the state case and the claim for declaratory relief is now moot.

Similarly, Jensen alleges Judge Cole violated the ADA surrounding accommodations and complaint procedures. Leaving aside the conclusory nature of Jensen's allegations against Judge Cole, judicial immunity applies even if a judge has acted in excess of his or her authority for conduct associated with the judicial process. Judge Cole is thus entitled to judicial immunity and is dismissed as a party.

Additionally, Jensen alleges Chief Justice Wilson violated Jensen's access to Court records. Again, leaving aside the conclusory nature of Jensen's allegations against Chief Justice Wilson, judicial immunity applies to allegations of misconduct against Chief Justice Wilson, and he is thus dismissed as a party to Jensen's claims.

**B. Jensen is granted leave to proceed in forma pauperis on Count I against JH Met and/or Gamache only.**

Jensen's proposed Count I alleges violations of the FDCPA §§ 1692d and 1692e against JH Met, Gamache, and Lebow for abusive debt collection practices. Under § 1692d, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Under § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

Affording Jensen's allegations broad construction in light of his pro se status, Jensen's FDCPA claim stems from JH Met, through its counsel Gamache, filing the state case against Jensen in an attempt to collect a debt, despite the terms of the assigned contract which required arbitration of any disputes. The Court grants Jensen leave to proceed in forma pauperis against JH Met and Gamache in Count I.

By contrast, however, Jensen's Count I alleges Lebow also violated the FDCPA, but the factual allegations of the complaint provide no basis from which the Court might infer Lebow was involved in the collection of any debt in her position as Court Clerk. The motion to proceed in forma pauperis as to Lebow in Count I is denied because Jensen fails to state an FDCPA claim against her.

### B. Jensen's motion to proceed in forma pauperis on Count II is denied.

Jensen's proposed Count II alleges JH Met and Gamache deprived Jensen of due process in violation of 42 U.S.C. § 1983. Section 1983 provides an avenue for civil liability against state actors for the violation of constitutional rights. Because JH Met and Gamache are not state actors, no liability may arise against them under § 1983, Jensen's Count II fails to state a claim, and Jensen's motion to proceed in forma pauperis on Count II is denied.

### C. Jensen's motion to proceed in forma pauperis on Count III against the Citibank defendants is granted.

In Jensen's proposed Count III, Jensen seeks to nullify the Citibank defendants' assignment of a contract. Jensen alleges "a right to contractual performance" by the Citibank defendants, and thus seeks to nullify the Citibank defendants' assignment of its contract rights to JH Met. The proposed complaint cites to § 57A-2-210 of the South Dakota Codified Laws: "[a] party may perform his duty through a delegate unless otherwise agreed or unless the party has a substantial interest in having his original promisor perform or contract the acts required by the contract." S.D.

5

Codified Laws § 57A-2-210(1). Broadly construing Jensen's factual allegations, Jensen is alleging a claim for breach of contract against the Citibank defendants for assigning their agreement with Jensen to JH Met. In light of Jensen's pro se status, the Court grants Jensen leave to proceed in forma pauperis against the Citibank defendants on Count III.

### D. Jensen's motion to proceed in forma pauperis on Count IV is denied.

Jensen's proposed Count IV seeks cancelation of the Citibank defendants' trademark on the basis that the Citibank defendants abandoned their rights by assigning a contract to JH Met. A claim for cancelation of a trademark registration requires the plaintiff to show "they are likely to be damaged by the registration and that there are valid grounds why the registration should not continue to be registered." Dream Team Collectibles, Inc. v. NBA Props., Inc. 958 F. Supp. 1401, 1421 (E.D. Mo. Apr. 1997). The proposed complaint contains insufficient facts from which this Court might infer Jensen's standing to seek cancelation of the Citibank defendants' trademark rights. The motion to proceed in forma pauperis on Count IV is denied.

### E. Jensen's motion to proceed in forma pauperis on Count V is granted against the State of Missouri and Stone County only.

In Count V of Jensen's proposed complaint, Jensen alleges Lebow, Sheriff Rader, Stone County, and the State of Missouri violated the Americans with Disabilities Act. Jensen alleges these defendants violated the ADA by not allowing Jensen to use his "cell phone as expertly configured to aide his disability." Jensen further alleges he suffers from bipolar disorder and his treatment in the course of defending the state case violated his rights under the ADA. Jensen alleges he was frustrated by telephone communications with the state court clerk's office, was "aggravated by years of being forced to wait on hold," and "act[ed] out in tone of voice, pitch, and attenuation." (Doc. #5-1 at 11-13). Broadly construing Jensen's allegations, he alleges these defendants violated the ADA because they did not reasonably accommodate his bipolar disorder.

6

Title II of the ADA "authorizes suits by private citizens for money damages against public entities that" discriminate against an individual with a disability. United States v. Georgia, 546 U.S. 161, 153 (2006) (citing 42 U.S.C. § 12132). "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in a Federal or State court of competent jurisdiction for a violation of this chapter." Id. (citing 42 U.S.C. § 12202).

To establish a violation of Title II of the ADA, a plaintiff must demonstrate the following: (1) he is a qualified individual with a disability; (2) he was excluded from participation in or was otherwise denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against; and (3) that such exclusion or discrimination was "by reason" of the disability. Layton v. Elder, 143 F.3d 469, 472 (8th Cir. 1998).

Under the applicable standard, the Court grants Jensen leave to proceed in forma pauperis against the State of Missouri and Stone County with respect to his proposed Count V for violation of Title II of the ADA. Though Jensen also names Lebow and Rader as defendants to this claim, individuals in their personal capacities are not subject to suit under Title II of the ADA. Baribeau v. City of Minneapolis, 596 F.3d 465, 484 (8th Cir. 2010). Moreover, official capacity claims under Title II of the ADA asserted against individuals in their official capacity are construed as against the public entity for which the official works. Id. Jensen's motion to proceed in forma pauperis on Count V as alleged against the State of Missouri and Stone County is granted.

**F. Jensen's motion to proceed in forma pauperis on Count VI is denied.**

Jensen's proposed Count VI alleges the States of Missouri, Stone County, the Missouri Office of State Courts Administrator (OSCA), Kathy Lloyd as State Courts Administrator, and Lebow violated Jensen's right of access to public documents. In particular, Jensen alleges the

Case 6:22-cv-03140-BCW   Document 41-1   Filed 12/17/22   Page 38 of 41

computer system used by the Missouri Courts excludes certain documents from public access. (Doc. #5-1 at 21).

Jensen's factual allegations pertaining to Count IV are as follows: (1) Lebow is responsible for providing court records; (2) the OSCA designed and engineered Missouri Case.net; (3) Jensen was only able to access a document list for the state case and not the documents themselves; (4) Jensen requested a list of all cases to be heard on a particular date and Lebow denied the request on the basis of confidentiality; and (5) Lebow indicated Jensen would need to pay for $.25 per page of documents for his case.

There exists a presumption in favor of the public's right of access to court records. State ex rel. Winkler v. Goldman, 485 S.W.3d 783, 788 (Mo. Ct. App. 2016); Mo. Rev. Stat. § 109.180. "Courts must demonstrate a recognition of the presumptive right of access, and must offer some explanation for keeping records from public view." Id. (citing Transit Cas. Co. ex rel. Pulitzer Publ'g Co. v. Transit Cas. Co. ex rel. Intervening Emps., 43 S.W.3d 293, 300 (Mo. 2001)). To demonstrate that the right of access has been violated, a plaintiff must show (1) a recognized cause of action; (2) restriction on that cause; and (3) that the restriction is arbitrary or unreasonable. Weigand v. Edwards, 296 S.W.3d 453, 461 (Mo. 2009).

Broadly construing Jensen's allegations, Jensen alleges the State of Missouri, the OSCA, Lloyd in her official capacity, Stone County, and Lebow in her official capacity denied Jensen access to documents. But Jensen does not allege any of these defendants withheld public documents. To the contrary, Jensen alleges Lebow refused to furnish Jensen with a list of cases to be heard in front of a particular judge on a particular day because the requested document "contains confidential information and it is for Court use only." (Doc. #5-1 at 6). Moreover, Jensen does not allege he was deprived of access to the state court records; rather, he alleges information about the

8

state case was electronically available through Missouri Case.net, and if Jensen sought a paper copy of the documents, he would be charged $.25 per page. Because Jensen has not alleged sufficient facts from which the reasonable conclusion could be drawn that defendants placed an arbitrary or unreasonable restriction on Jensen's right of access, Jensen's proposed Count VI fails to state a claim and the motion to proceed in forma pauperis on Count VI is denied.

Based on the foregoing, Jensen's motion to proceed in forma pauperis is granted in part and denied in part. As set forth above, Jensen's proposed amended complaint is insufficient in part under Fed. R. Civ. P. 12(b)(6), and the Court cannot grant Jensen leave to proceed in forma pauperis on those claims that are insufficiently pleaded. Accordingly, it is hereby

ORDERED Jensen's Application for Leave to File Action Without Payment of Fees (Doc. #1) is GRANTED IN PART AND DENIED IN PART. The proposed complaint is deemed properly filed as of the date of this Order. Jensen is granted leave to proceed in forma pauperis with respect to Count I against JH Met and Gamache only, Count III against the Citibank defendants, and Count V against the State of Missouri and Stone County only. It is further

ORDERED Jensen's proposed Count I against Lebow and Judge Blankenship is DISMISSED. Jensen's proposed Counts II is DISMISSED. Jensen's proposed Count IV is DISMISSED. Jensen's proposed Count V against Judge Cole, Lebow, and Sheriff Rader is DISMISSED. Jensen's proposed Count VI is DISMISSED. Jensen's proposed Count VII is DISMISSED. It is further

ORDERED Jensen is granted leave to proceed in forma pauperis in this cause as to the following claims only:

-Count I alleging violation of the FDCPA against JH Met and Gamache only

-Count III alleging breach of contract against Citibank, N.A. and Citigroup Inc. only

9

-Count V alleging violation of Title II of the ADA against the State of Missouri and Stone County only

The motion to proceed in forma pauperis is otherwise denied.

Stated differently, the following defendants are dismissed as parties to this case under Fed. R. Civ. P. 12(b)(6): (1) Judge Blankenship; (2) Judge Cole; (3) Chief Justice Wilson; (4) the OSCA; (6) Kathy Lloyd in her official capacity; (7) Mechelle Lebow in her official capacity; and (8) Sheriff Rader in his official capacity. It is further

ORDERED the motion for hearing filed on June 15, 2022 (Doc. #4) is DENIED WITHOUT PREJUDICE. This matter shall proceed as detailed above and the Court may set an initial scheduling conference after service of process is complete. It is further

ORDERED the Clerk of the Court is directed to forward the appropriate process forms to Plaintiff at his address of record. Not later than **October 14, 2022,** Plaintiff shall return the completed summons and service forms to the Clerk's Office showing the address where the remaining defendants (J.H. Met, David Gamache, Citibank, N.A., Citigroup Inc., the State of Missouri, and Stone County) may be served. Upon receipt of the completed process forms, the Clerk of the Court is directed to issue summons and process and deliver the same to the United States Marshal for service, pursuant to Fed. R. Civ. P. 4. It is further

ORDERED Plaintiff's failure to return the completed summons and service forms to the Clerk's Office by the stated deadline may result in dismissal of this cause without further notice.

IT IS SO ORDERED.

DATE: September 23, 2022       /s/ Brian C. Wimes
                              JUDGE BRIAN C. WIMES
                              UNITED STATES DISTRICT COURT

10